Case number 22-5603, United States of America v. Calvin Cogdill, Oral Argument Not to Exceed, 15 minutes per side. Jennifer Coffin, for the appellant, you may proceed. Good morning. Thank you. I'm reserving two minutes of my time. Very well. Good morning. Good morning. Whether this court approaches the Erlinger error in this case as a question of structural error or instead as one subject harmless error review, the answer is driven by the same reality. It is impossible for this court to determine, beyond a reasonable doubt, what a properly instructed jury would have done had the government been put to its proof at trial under the rules of evidence. Especially not when the jury now would be instructed that, quote, no particular lapse of time or distance between offenses automatically separates a single occasion from a distinct one. And we have proof of the unknowable nature of this hypothetical outcome. Already in one ACCA case, the district court excluded Shepard documents as inadmissible, leaving the government with no competent evidence to prove the occasion's different fact and resulting in a Rule 29 judgment of acquittal. We have two jury trials where the government presented evidence of different occasions, and the jury still found that the government had not met its burden beyond a reasonable doubt to prove those different occasions. And in one of them, Hennington, out of the Northern District of Georgia, the two offenses at issue were committed at least four months apart, not terribly different from the circumstances presented here. And there's only one remedy consistent with the Double Jeopardy Clause. Because Mr. Cogdill pled guilty to the lesser felon in possession offense as charged, he cannot be subject to ACCA's greater punishment. Mr. Cogdill, did you preserve the Double Jeopardy issue? It appears to me that the first time that that issue was raised was in your supplemental brief. If you raised it in district court, when did you do it? So my first answer to that is, in this case, the Double Jeopardy argument serves two purposes, the most forcible of which is that it constrains the remedy that is permitted based on this error, and if the error is not harmless. So it operates already, regardless whether there was a preserved, independent Double Jeopardy Clause claim, to restrict the potential remedies. All right, so you admit you did not preserve it in district court? Well, my next sentence was going to be that being said, the issue actually was preserved. And it was preserved because throughout the proceedings here in the district court, in this court, and the Supreme Court, Mr. Cogdill argued that because he had pled guilty to the lesser felon in possession offense, he could not be subject to the ACCA as a greater form of an aggravated form of the offense. That was the nuts and bolts of his argument. And in this court's decision in L.A., and I'm sorry, I'm not sure how it's pronounced, E-H-L-E, and I cite it in a footnote in my brief, at the end of my brief, in that case, the court said, if the defendant makes the argument that is the basis of a Double Jeopardy claim, and that argument doesn't expressly invoke the Double Jeopardy Clause, the court will still review de novo that claim. And my position is that Mr. Cogdill did make that argument by saying that because he pled guilty to the lesser offense, he could not be punished for the greater offense. Once it turns out, as now the Supreme Court has told us, the ACCA has been reclassified as a greater offense, effectively. Effectively, okay. I mean, at his change of plea argument, he was advised, was he not, that he could be subject to the Armed Criminal Career Act? Sure, but he made no admissions regarding that. I know, but then he pled guilty knowing that that could be the sentence, right? He pled guilty to the elements of the lesser felon in possession offense. That in no way, regardless of what he might have been told, that in no way meant that he could be punished for the greater offense that he didn't plead guilty to. And I would point to Yancey as a perfect example of that, where the person pled guilty and there was talk about greater offense. And the only reason that the court said that prejudice was not presumed in that case was because the person voluntarily admitted the aggravating fact that changed the offense. And if I may, I don't really want to focus on the double jeopardy clause argument, partly because it works efficiently as a constraint on remedy. I'd like to talk a little bit, if I may, about the argument that this error is structural error and therefore requires reversal in any event. The government would have the court think that this is just a run-of-the-mill omitted element case. When it is not, it is completely different from the circumstances in Nader and Requenco and Campbell, which is the drug case the government cites in its brief where there was an apprendi error and a trial. And this is why it's different. In Nader and Requenco, the defendants went to trial on the offense as charged. And during that trial, evidence regarding the ultimately omitted element naturally and ordinarily came in as part of the proof of the elements that did go to the jury. So, for example, materiality, part and parcel of the evidence of the tax fraud. The type of weapon was part and parcel of the assault with a deadly weapon to wit, a handgun charge. Drug case quantity is going to appear as part of the proof. This particular circumstance here, the ACCA requirements of three prior convictions that qualified ACCA predicates committed on occasions different from one another. That evidence is never going to come into a 922G felon in possession case as charged because it would be inadmissible, irrelevant. It doesn't come in. And that's going to pretty much be always the case in every situation. As a result, it's not possible for the court to engage in a harmless error analysis when the evidence of the omitted requirements would never have come in the trial. And that's why this case really does look more like the situation in Rose v. Clark that situations talked about where it's not possible for the court to actually engage in a harmless error analysis. And that's why Mr. Cogdill's first position is this is structural error. Even if harmless error review applies, the government can't prove based on the evidence here, even assuming it could get past the evidentiary rules at trial, that the evidence here satisfies the occasions different test set forth and wouldn't. OK, aren't you confusing two issues there? You're saying that based upon the evidence, the government cannot prove beyond a reasonable doubt that a jury would would so find that this occurred on different occasions. That's a different issue of whether an error itself is structural or not structural. Is it not? These are two different inquiries. Right. And aren't you combining the two by saying because the government cannot prove it, it must be a structural error. I think that that is the wrong analysis. Well, I actually I should probably be more careful when when when we're talking about whether something is a structural error, we have to look at the trial. That would have happened had he gone to trial as charged. We look at the trial. Well, I mean, structural error. You know, it includes the complete denial of counsel, the denial of a public trial, you know, a defective reasonable doubt instruction, the complete denial of a jury trial. I mean, those those don't necessarily require that a trial occur. Just that something that's structural to due process was denied. And those I mean, those are very limited circumstances. That's what the Supreme Court has said. It also includes circumstances in which the outcome had the error not occurred is unquantifiable and indeterminate. And what I'm saying is that here that has to be the case because had he had Mr. Cogdell gone to trial on the offense as charged, there would have been no evidence entered about his the ACCA requirements because it wouldn't have been part of the proof of the felon in possession offense. But I agree with you the harm. So when I moved on to the harmless error analysis, that is a different analysis. And what that analysis is, is that before you go there, Ms. Kaufman, I'm sorry to interrupt you, but I guess I'm still just the premise. I get what Judge Griffin is saying here, which is that it really does seem like what you're arguing goes to whether or not it's harmless, not whether or not it's structural, not whether or not structural applies. And even as to your argument that, well, this would always be the case, particularly with a 921 excuse me, 922 G1 claim, I guess ordinarily it would be because generally defendants will stipulate that they've got a prior felony offense. However, if you had a defendant who said, hey, I was never convicted, there's nothing there, then wouldn't the government be required to put in evidence of prior convictions in order to satisfy that element? And who knows, they might have to put in evidence of several, if the defendant is saying, I have no prior felony conviction. In Judge Davis, in that circumstance, first of all, that would be an unusual case. That would not be unusual, granted. Right. And second of all, even if evidence of prior convictions were to come in in some form or fashion, they would not come in to prove in any way, there wouldn't be proof about their relationship to each other or their time, distance, relationship to each other. It would have been the base mere fact of prior conviction. All that being said, I would like to say that the court actually doesn't need to decide the question whether this error is structural in this case, because even under a harmless error analysis, the government cannot prove beyond a reasonable doubt, or the court can't determine here that the government could prove beyond a reasonable doubt, that Mr. Cogdell committed these two methamphetamine offenses on occasions different. There is enough here that is related to the wooden test, similar conduct, length of time that is not different from the length of time that the jury found was not sufficient to prove different occasions in Pennington. And so what we already have is evidence by actual jury outcomes that situation like this doesn't necessarily mean that the government can prove beyond a reasonable doubt that these prior offenses were committed on different occasions. And on that point, I would like to correct something that the government states in its brief, which is that the government says that Mr. Cogdell conceded that these drugs could not have come from the same stash, when in fact that's the opposite of what Mr. Cogdell argued in the district court. Once he was mistaken about the order of the prior offenses, and once he was corrected and he understood that it was a distribution of a small amount first, then a possession of a distribution amount second, his argument was the possession could have been from the same stash that the distribution was from. That's what the district court understood his argument to be, because it engaged in a lengthy discussion with the government afterward about this theory. That's what the prosecutor understood his argument to be, because the prosecutor said on page hashtag 349 of the transcript, there was a decent argument. So it is not the case that there was a concession that these were different stashes. Also, it is not the case that the proximity factor in yours in the favor of the government, it's the opposite because there was no evidence that these offenses were committed any distance from each other. And so a jury could conclude that they could have been in the same place. And with that, if the court doesn't have any further questions, I am done. Thank you. All right, we'll hear from the government. Mr. McLaurin. May it please the court. My name is Luke McLaurin and I'm here on behalf of the United States. In light of Erlinger, the district court erred by not submitting the ACA occasions issue to a jury. But that error is harmless because if any rational jury been asked to find that occasions element, it would have concluded that Mr. Cogdell's three prior serious drug offenses were committed on occasions different from one another. Mr. Cogdell's conviction and sentence should accordingly be affirmed. I'd like to begin by responding to a few points the council made in regard to her structural error argument. It's our position that this issue is pretty straightforward for this court. The Supreme Court has already held repeatedly that failing to submit an element to a jury is a structural error. That includes errors that are. It is not a structural. It's not a structural. Thank you for correcting me, Judge Griffin. And we see that in Nader. We see that in Ricconeau. We see that in Greer. And I think the Greer case is particularly important because counsel here has spent a lot of time talking about while Nader and Ricconeau involved situations where there had been a trial. Greer involved situations where the defendants were coming up after a defendant had pled. And the court made very clear that the omission of an element is not structural, whether it happens in the trial context or in the plea context. The court specifically said the omission of an element from a plea colloquy, like the omission of an element from jury instructions, does not affect the entire framework within which the proceedings occurs. It's simply not the kind of error that is incapable of having its harmlessness be assessed. And that's really what we're looking at when we're thinking about structural errors. Are these the kinds of errors that we just can't ever assess the impact they might have had on the case? Those kinds of errors include things like what Judge Griffin said, complete denial of counsel, lack of a fair trial judge. There, you just can't assess the impact of that error. This isn't one of those errors. And I think it's where we see that this is not an error whose harmlessness can't be assessed is you look at the kind of issue that we're talking about. Look what Wooten and Erlinger both said about this, that the question of whether offenses are committed on occasions different from one another is generally going to be pretty straightforward. And in most cases, the answer is going to be clear. Admittedly, there will be some closed cases. And perhaps in some of those closed cases, the government is not going to be able to show harmlessness. But it's the kind of error whose harmlessness can be assessed. In turning to assessing harmlessness here, the Supreme Court has outlined the test for assessing harmlessness. The test is to look and ask whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element. And there's simply no evidence in this record that could rationally lead to a finding different than what the district court and this court previously found, that these offenses were committed on different occasions. I'm going to focus my discussion on the two Tennessee offenses. Let me just ask you, why is that the test that rationally, you can rationally found instead of the test being that we can determine that the jury verdict would have been different? Well, I'm pulling that test directly from the Nader opinion, Judge Clay. That's how the court said you're supposed to conduct the analysis in assessing would the jury verdict have been different in a context like this. If you look at the evidence in the record and you ask, does it contain evidence that could rationally lead to a contrary conclusion with respect to the omitted element? And if it doesn't, then the error is harmless. Because if there's nothing in the record that could have led the jury to rationally find for the defendant, then the lack of a jury finding about that particular element is going to be harmless. And that's exactly what we have in this case. Counsel, isn't it the other way around? Isn't the government's burden to establish beyond a reasonable doubt that the jury would find that these were committed at different occasions? I mean, aren't you putting the burden on the wrong party? No, Your Honor, we are saying that the burden is on the government. And the question is, how can you assess whether it's clear beyond a reasonable doubt? Yeah, you say there's a lack of evidence. If there's a lack of evidence, that's the problem with the government and not the defendant, isn't it? We're talking about a lack of evidence as to a contrary finding. If there is a plethora of evidence to support the conclusion the government is arguing for. And there's simply no evidence in the record that could support a contrary finding. Then the court can be confident. The problem I have with the Tennessee offenses, there are three factors under Wooden v. United States. And none of them are determinative. I mean, you balance the three of them. And they are timing, proximity, and the relationship of the offenses to one another. You argue all on timing. You say because there's a three-month gap in regard to the Tennessee offenses that that's it. But that's only one of the factors. We also have proximity and relationship. And we really don't know anything about that. We don't know if it's the same location, it's the same scheme, it's the same plan. I mean, we really have no evidence as to the relationship of these two offenses. And all you have is the three-month gap. I mean, it's hard for me to evaluate these three factors when we don't have anything as to the proximity and the relationship of the offenses. Well, I think what Wooden tells us is that in some cases one factor can predominate. And Wooden emphasizes that when there are substantial gaps in time, as this court recognized in its opinion, that is a strong indicator of separateness. It's a strong indicator, but it's not dispositive, that's all. And you say it is dispositive here. Well, I'm actually relying on the Supreme Court, which says it can be dispositive. And when it can be dispositive is when there's nothing to counterweigh that substantial gap in time. Yeah, there's nothing the government established as to the proximity that these were – actually, I guess the documents show they're in the same county, Bradley County. But we don't know if they're in the same location. We don't know if it's the same people they sold the meth to. We don't know if it was the same plan, scheme, MO. We don't know anything about these two offenses other than the date, I think. And so it's hard for me to say under these factors that they're on different occasions, that's all. We have to look at the evidence that's in the record. And the evidence in the record, yes, it doesn't say anything about the precise location. And it doesn't contain anything that would suggest these two offenses were similar or intertwined in a way that would lead a rational jury to conclude that they were committed on the same occasion. And so the question is, given the evidence in the record, is there any rational basis that could have led the jury to reach a contrary finding? There isn't. All the evidence in the record points to one conclusion. No evidence points to the other conclusion. That is a classic case of harmless error. And in fact, the Supreme Court addressed this precise scenario in Nader. And it said, when you have a situation where the defendant did not and apparently could not bring forth facts contesting the admitted element, then the error is going to be deemed harmless. And that's exactly what we have here. The defendant had an opportunity to litigate this at the sentencing hearing. He didn't bring forward any information to contest any of these facts. So I think we can rely on the facts as we know them. We don't have any information to suggest that these offenses were somehow similar or intertwined. There's simply no rational basis on which a jury could have found that they were similar or intertwined. Now, I'd like to address the contention that we should give some weight to other cases where juries have done other things. The government's contention is that ad is completely irrelevant. Pennington and the other cases that Ms. Coffin has titled are completely irrelevant. The question that this court has to confront is on this record. to conclude that a rational jury would have reached a contrary finding. Or can the court be confident that had this issue been presented to a jury, it would have found beyond a reasonable doubt that these were committed on different occasions. We don't know what happened in those other cases. It's true. The mere fact that offenses were committed four months apart isn't necessarily dispositive, but the Supreme Court emphasized it can be dispositive. And where it is dispositive is where you don't have anything else to suggest that the offenses were intertwined or part of some common course or conduct. And I would urge the court to look as an example of a contrast at the Jackson case, which we brought up in our 28-J letter yesterday. There was a great example of where an error is not harmless. You had offenses committed very close in time, on the same date, very close location, just a mile apart from one another. In fact, they were committed five minutes apart from one another. They were committed by the same people using the same method to commit each robbery. That's precisely the kind of scenario in which you have information that could rationally lead to the conclusion that those offenses were part of one occasion. Here we don't have any evidence that could rationally lead to the conclusion that these offenses were part of one occasion. All the evidence in the record shows that they were committed with a substantial gap in time. And that is undisputed. I note that if you look at the PSR carefully, excuse me, if you look at the sentencing transfer, if I direct the court's attention to pages 326 and 329 in the record, defense counsel was specifically asked, are you disputing the facts of the dates in which these occur? Do you agree that these dates as listed in the PSR are accurate? And the answer was yes. There's simply no reason to doubt that the offenses occurred on these dates. I'd also like to respond to Ms. Miles-Coffin's suggestion that the government wouldn't have been able to prove the dates with admissible evidence. The judgments of the prior convictions would have been admissible under 80322. The statements alleged in the indictments in this particular case, because these all involve offenses to which the defendant actually pled guilty as charged, would have been admissible as statements of party opponent under 801D2B because they were statements the defendant adopted or manifested his belief as being true. There is admissible evidence to establish the dates. And even if we assume there's admissible evidence to establish all the other facts in the record about these offenses, there is nothing about these offenses that you could rely on as a rational jury to suggest that they're similar or intertwined or that they're somehow part of the same offense. The mere fact that both involved drug trafficking doesn't provide a rational basis for concluding that the offenses were committed on the same occasion. The statute itself contemplates that offenses of the same kind, burglary offenses, drug trafficking offenses, can occur on separate occasions. So the mere fact that you have a defendant who commits two offenses of the exact same time, that in and of itself does not indicate or provide any rational basis for indicating that they occurred at the same time or on the same occasion. Doesn't this really kind of go at least a little bit to what Judge Frickin was saying, which is that what we have in the record here is simply just not enough. It doesn't give us enough information because it doesn't speak to those issues. You're saying that, oh, a rational juror could not have found that based upon this information. That's a problem because since it was never before the jury, this information is not in the record. But, Your Honor, the court has to look and say there has to be some reason to believe that had this been presented to a jury, there would have been information that would have been presented. Well, we don't have any information, for instance, on the scheme or if this could be part of the same scheme or plan because we don't have the details concerning the actual convictions, what was underlying them, the circumstances surrounding them. That's not in the record. And again, that absence of information in the record, which the defendant had an opportunity to develop, they haven't pointed to anything to suggest that there is, in fact, evidence that they could point to had this case been presented to a jury that would have suggested that these were similar interests. Well, that's doing exactly what Judge Griffin said, which is placing the burden on the defendant. We look at this through the lens of whether or not we can definitively say that a rational jury would not have. And so for that, they have to have had full information. Well, and in doing that, what the Supreme Court has said you do is you look at the evidence that is currently in the record. And if the evidence that is currently in the record does not support a finding, a contrary finding, and all the evidence only points in one direction, then that means the error was harmless. Like the Supreme Court has said. I think you're not going to convince me you're not turning it on its head. That sounds upside down to me with respect to it's not looking at whose burden it was. Well, Your Honor, how else is the court supposed to assess harmlessness other than by looking at the information that's in the record? And if the information in the record only points to one direction, then the court has to say that that's the only finding a rational jury could have reached. So the information in the record here, and I don't want to belabor this, the information in the record here can establish the dates of these last two prior offenses. The first one's really not a part of this whole thing. That's what it can establish. The record is silent on these other things. It was never his burden to establish that they were part of the same occasion. It was the government's burden to establish that it was. And so what we are looking at is whether or not a rational jury based upon this record would not have found that. And if we say, well, he didn't have the opportunity to actually develop this record because the issue wasn't before it, then I just don't know how we could say that this is harmless. Well, I think you look at the record that's there, which is what the Supreme Court says you do. And you look at the record that's there. And the record does include some information about how the offenses were committed. It does include information about how one offense was committed with another individual. One offense was committed by Mr. Coggill by himself. And the court asks, is there any rational basis in this record for a jury to have reached a contrary finding? And Wooten doesn't say that the nature and character of the offense is always something that has to even be considered or is always something that is going to outweigh one thing or another. Wooten says that substantial gaps in time can alone be sufficient. And when you have substantial gaps in time, you have information about how the offenses were committed and nothing in that information suggests that the offenses were committed on the same occasion, then I don't see how the court can say that a rational jury could have found that these offenses were committed on the same occasion. I know we're a little bit over time, but I do have one more question because you've mentioned the PSR and Shepard documents. Can you speak a little bit more to the government's position that the Shepard documents can be used to establish anything other than the fact of conviction? Well, Your Honor, we believe that the indictments and the judgments here would be admissible evidence were this case brought in front of a jury. The indictments, excuse me, the judgments are actually admissible and be admissible to prove the date of the offense. To cabin this, I'm really speaking more, for instance, you just talked about the circumstances surrounding one of the convictions. I wasn't looking so much at the actual court filings, but when we've got information in the PSR about the circumstances of the conviction. I mean, witnesses could have testified at trial about the circumstances of the prior convictions. Witnesses who had personal knowledge who observed the prior offenses could have testified at trial about the prior conviction. As far as the dates and the information contained in the indictment, those would be admissible and could be presented as judgments. The judgments would be admissible under 803 22. The language in the indictments would be admissible in part under 801 B to B. And then I feel like you're you seem like I'm not answering your question, Judge Davis. So maybe you can clarify. So I do want to make sure I answer your question. Yeah. And I know we're a little bit we're over time. Really, what I'm looking at is, for instance, you referenced circumstances surrounding the convictions, which is information that is in the PSR. For instance, the probation officer has looked at. That is not a judgment. That's not a filing within the court. Why are we able to look at that narrative that's in the record, albeit in the PSR, but it does not have some of those other indicia of reliability? Well, I think that I think in this particular case, the PSR actually doesn't include much information beyond within the Shepard documents. But the court has said the Supreme Court has said when you're conducting this analysis, you are supposed to look at what would a jury have based on what's information in the record. You know, you have to assume a situation. I'm talking about Greer here. Greer talks about you assume a situation in which a jury was given a proper instruction and then look at what kind of evidence could have been presented based on the evidence that is in the record. Obviously, evidence wasn't presented to a jury. And so based on the evidence that is in the record in the PSR, the PSR wouldn't be a document that's presented. But witnesses could testify about information that is in the PSR. Here, I would submit that I don't know that you really need to look beyond the Shepard documents because there's actually not much more information in this PSR than what's already in the Shepard documents. The PSR actually just recites the Shepard documents. But I think in conducting the analysis, what Greer says is you don't just assume that a jury would have been given an instruction and the government wouldn't have presented any proof to meet its burden. You look at what proof is available in the record that the government could have used to meet that burden had the jury actually been presented with that instruction. And here the proof in the record would come from the indictment and would come from the judgment. And we think that that proof is sufficient to show beyond a reasonable doubt that these offenses were committed on different occasions. And there is nothing in that proof, nothing in that evidence, and nothing else in the record that suggests there is any other evidence to show that these offenses were similar or intertwined, shared common scheme or plan in the way that would render them offenses having been committed on the same occasion. And that's the reason. Judge Clay, I know we're over time, but can I ask one final question?  Mr. McLaren, in their supplemental brief, the appellate raises the double jeopardy issue. Can you briefly respond to it? Yes, Your Honor, I actually have three points I'd like to make in response. First, that issue has been waived because it wasn't presented in the initial brief, but it's also been forfeited because it wasn't actually raised below ever at any point. And so at best, it could only be reviewed for plain error. And we don't think they even get the first prong of plain error. There simply was no double jeopardy violation here. The defendant was charged with one offense, a violation of 922G. Contrary to what Ms. Niles-Kauffman has stated, he never specifically pled guilty to an unaggravated version of that offense. It was clear throughout this case, and you see this in the factual basis, you see this in the plea colloquy, that what was identified is both potential penalty provisions, the one under 924A2 and the one under 924E1. Both were referenced during the plea colloquy. Both were referenced in the factual basis. And he pled guilty, understanding that either potential penalty was an option. So we don't have a situation where a defendant was punished twice for the same offense. He committed one offense and received one punishment for it, the punishment in 924E. That is entirely consistent with the double jeopardy clause. So I think her double jeopardy argument is just completely flawed at the outset. But again, we also submit that that argument has been waived. As far as her point that it somehow affects the remedy, I think the remedy here is a little bit unclear, even if the court were to find the error harmful. Because if you look at Greer, what it says is when you're talking about this kind of error in a plea context case, what that suggests is that there was improper way in which the elements were described during the plea colloquy. And in that situation, what you have is an invalid plea. And the remedy for that is not a remand for resentencing. A remedy for that is a remand for a redo of the plea process. And I would encourage this court, to the extent it's concerned about the remedy, to check out the Second Circuit's decision in United States v. Bald. I'm sorry we did not cite this in our brief. It's 943F3rd73, and it's from a 2019, and it's from the Second Circuit. And it addresses a situation where there was, in fact, a rehaif error, very similar type of error here. A rehaif error that was actually found to be harmful, a rehaif error in a plea context. And what the court there said is, you know, the remedy isn't just to, you know, throw the whole thing out. The remedy is you send it back because the plea colloquy itself was improper when this element wasn't covered in the plea colloquy. So you send it back so the defendant can withdraw his plea because the plea entered was not knowing and voluntary because all the elements weren't covered during the plea colloquy. So we would just note that the remedy question, I think, is a little bit more complicated than opposing counsel has suggested. Unless there are any other questions, we will rest on our briefs. All right. Thank you, counsel. We'll hear rebuttal. So I would like to make two points, if I may. The first is that as Judge Griffin and Judge Davis, you recognize the government is flipping the burden that would happen at trial. The government repeatedly says that there's no evidence that the jury could rely on to find that these were same occasions. But that's not what the jury would be finding. The jury is finding whether the government has proven beyond a reasonable doubt that these offenses were committed on different occasions. That's the question for the jury. The jury is not deciding whether they were on the same occasions. And that's what the reasonable doubt standard is. That's what the burden is all about. And Mr. Cogdell never relinquished at any time his demand for the government to meet that burden at trial. The government also repeatedly talks about how, you know, in this context and refers to Greer and Gary, that the court can just look at anything that was in the record. But in fact, when you're doing harmless error review, as opposed to plain error review, which is what was going on in Greer and Gary, the court can only look at the trial record. And in this case, that would be the plea proceedings, the plea colloquy, the elements to which he actually admitted. And the reason I say that, and I would ask you to look at Justice Sotomayor's concurrence in Greer and Gary, where she explains why on harmless error review, the analysis that the court engaged in in Greer and Gary would not apply. Because the defendant has not relinquished his right to put the government to its burden, which in this case is to show that a rational jury would find beyond a reasonable doubt that under using admissible evidence that these offenses were committed on different occasions. And on the point about the judgments, the government says the judgments would come in and including the dates and the judgments. In fact, under 803.22, the judgments, if they come in, would come in only to prove a fact essential to the judgment, which is the fact of the conviction and the elements of the offense. That does not include the date, because date is not an element. And in any event, if we were at a trial for occasions different, the judgments would not come in anyway, because the fact of conviction and the elements of the offense go to the question whether the offense is an ACCA predicate. And that's what the judge decides still under Almendora's Torres. So it is not necessarily true that these documents would come in at a trial. Indictments would be subject to the Confrontation Clause as well. So these are issues that are actually being litigated. And in some cases, courts have said these documents do not come in. So it's not necessarily true that this evidence would come in in any event. And so I guess in the end, I just want to make one final point about the Double Jeopardy Clause. I would ask the court to review this court's decision in Bell, which is cited in our case, and also Pena out of the First Circuit. That case is very much like this case because it has to do with a person who pled guilty to a lesser offense in a drug case, even though the issue of death resulting was constantly talked about. And in that case, after it turned out that by pleading guilty to the lesser offense, that the person had not pled guilty to the greater death resulting offense, the First Circuit said that the Double Jeopardy Clause would prevent the government from convening a sentencing jury to decide the death resulting issue after Elaine. And with that, I ask the court to vacate the ACCA enhancement in this case and remand for resentencing without it. Thank you. Thank you very much for your arguments on both sides. The case shall be submitted.